IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DARLEA ANN DRAY,                    )
                                    )
              Plaintiff,            )
                                    )
v.                                  )    Case No. CIV-08-105-RAW
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security Administration,            )
                                    )
              Defendant.            )

**REPORT AND RECOMMENDATION**

Plaintiff Darlea Ann Dray (the "Claimant") requests judicial
review of the decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying Claimant's application
for disability benefits under the Social Security Act. Claimant
appeals the decision of the Administrative Law Judge ("ALJ") and
asserts that the Commissioner erred because the ALJ incorrectly
determined that Claimant was not disabled. For the reasons
discussed below, it is the recommendation of the undersigned that
the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social
Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 13, 1956 and was 51 years old at the time of the latest decision by the ALJ. Claimant completed her education through the tenth grade. Claimant has worked in the past as a deli clerk, food demonstrator, and home health care worker for the elderly. Claimant alleges an inability to work beginning March 13, 2004 due to hepatitis C and chronic cirrhosis.

## Procedural History

On May 17, 2004 and June 18, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 7, 2006, a hearing was held before ALJ Wayne Falkenstein. By decision dated December 26, 2006, the ALJ found that Claimant was not disabled. On May 18, 2007, the Appeals Council remanded the case to permit Claimant to comment on interrogatories submitted to a medical expert.

On September 25, 2007, a second hearing was conducted by ALJ Kim Parrish. By decision dated November 30, 2007, the ALJ found Claimant could perform her past relevant work and was, therefore, not disabled. On February 19, 2008, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform her past

relevant work.

Claimant asserts the ALJ committed error in arriving at a decision against a finding of disability which was not supported by substantial evidence and failing to follow the "slight abnormality" standard in finding Claimant's depression, borderline intellectual functioning, and arthritis are not severe impairments.

## ALJ's Findings

Claimant contracted Hepatitis C and was diagnosed with chronic cirrhosis of the liver in October of 2000. (Tr. 18). Claimant received treatment for those conditions with Dr. Thomas Rosenfield from June 10, 2003 through April 6, 2004. On July 23, 2003, Dr. Rosenfield found Claimant had a positive viral load. His assessment was chronic Hepatitis C with a need for a biopsy of the liver to determine the stage of the disease. (Tr. 164).

On August 19, 2003, the liver biopsy showed cirrhosis. Dr. Rosenfield assumed Claimant was a compensated cirrhotic from a combination of alcohol and chronic Hepatitis C. He told Claimant the disease was irreversible but the goal was to stabilize it and prolong the need for a liver transplant. (Tr. 156).

On November 26, 2003, Claimant was nine weeks into therapy for chronic Hepatitis C type 1B. She had some fatigue but no other major complaints. Dr. Rosenfield's impression was Hepatitis C,

5

underlying cirrhosis with pancytopenia.  He also noted swelling under the left eye.  (Tr. 146).

On January 7, 2004, Claimant was a non-responder with persistent viral activity at the end of three months of therapy for Hepatitis C.  Claimant reported feeling better after stopping her medication.

On February 2, 2004, laboratory testing revealed Claimant was positive for Hepatitis A and negative for Hepatitis B.  (Tr. 134).

On February 16, 2004, Claimant was evaluated by Dr. Rosenfield.  Dr. Rosenfield found Claimant was a non-responder with underlying cirrhosis after receiving therapy for Hepatitis C for a couple of months.  Claimant reported only slight depression and her appetite had not returned to normal.  (Tr. 132).

On April 6, 2004, Claimant was again attended by Dr. Rosenfield.  He noted Claimant was a non-responder with Hepatitis C and cirrhosis who was post therapy about three months.  Claimant complained of some arthritis pain in both knees and both shoulders that tended to get better with Advil.  Her alpha fetoprotein levels had returned to normal to the baseline at the time of her last visit.  She reported feeling well without any sleep or mood disturbance.  Dr. Rosenfield noted Claimant did not appear to be depressed or anxious and her memory appeared to be within normal limits.  His ultimate impression was Claimant suffered from

Hepatitis C with cirrhosis, compensated and currently stable. She was a non-responder to peg interferon, ribavirin therapy. She also had arthritic complaints, possibly primary arthritic problems such as degenerative disease versus arthritis associated with hepatitis. (Tr. 127-128).

On August 27, 2004, Claimant underwent a consultative examination by Dr. Carl Spirazza. He noted Claimant had a history of methamphetamine and morphine abuse and she reported she acquired Hepatitis C through needle sharing. Claimant stated she had nausea and vomiting with an intolerance to greasy food. She reported being able to perform activities of daily living, did not drive, and does not utilize any assistive devices for ambulation. He found Claimant's walking was restricted to 30 minutes and then Claimant has to stop due to fatigue and nausea. Sitting is limited to 30 minutes before Claimant gets back pain, shoulder pain, diffuse joint pain and right knee pain. She reported no problem with steps or with manual dexterity skills such as using the telephone or remote control. Claimant told Dr. Spirazza that she could not lift a gallon of milk due to weakness and pain on the left side and a pulling sensation of her shoulder on the right. (Tr. 190).

On September 2, 2004, Dr. David Guttman completed a Physical Residual Functional Capacity Assessment form on Claimant. He

concluded Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and unlimited pushing and/or pulling. Claimant's physical examination by Dr. Guttman was normal with the exception of diffuse rhonchi and scant wheezes, abdomen soft with diffuse tenderness, mostly in RUQ/SLR Neg, normal range of motion of all joints, no evidence of joint inflammation or deformity, and normal gait and station. (Tr. 196).

On January 11, 2005, Claimant received a psychiatric evaluation for mental disorders from Dr. Everett E. Bayne. His diagnoses included Axis I: Depressive disorder, NOS, secondary to chronic illness; Axis II: Deferred; Axis III: Hepatitis C, Cirrhosis of the liver - not currently being treated; Axis IV: Environment is a factor in symptom etiology - social, recreational and employment ramifications; Axis V: Present LOF: 55. Dr. Bayne's prognosis was "[w]ith proper treatment, this patient could improve within the next 12 months. This patient is mentally competent to manage funds without assistance. This patient appeared hones in giving information regarding the history. Information provided today is consistent with reports made available to us by SSI." (Tr. 210-211).

On January 29, 2005, a Psychiatric Review Technique Form was

completed on Claimant by Dr. Roy Smallwood. He found Claimant had Affective Disorders which were not severe. (Tr. 213). He determined Claimant had a mild limitation by demonstrating difficulty in maintaining concentration, persistence, or pace. (Tr. 223). Dr. Smallwood concluded Claimant had depressive disorder secondary to her liver ailment. He found her activities of daily living were not limited, although she did show some short term memory issues. (Tr. 225).

A document entitled "Medical Opinion" signed by Dr. Arthur Joyce and dated November 4, 2006 states Claimant has "[n]o identified medical impairment." He found no restrictions in activities of daily living, no difficulties in maintaining social functioning, and no repeated episodes of decompensation. Dr. Joyce does identify a mild impairment in Claimant's ability to maintain concentration, persistence, or pace, noting Claimant reports losing her train of thought often. He also states Claimant possesses "[i]ntellectual functioning below average, with expected below average performance in tasks of attention and concentration, immediate and delayed memory. . . ." (Tr. 241). Dr. Joyce rated Claimant's GAF at 70. (Tr. 242).

Nothing remarkable appears in Claimant's medical records through August 30, 2007. (Tr. 320-338). Claimant received refills on prescribed medications and her various conditions appear stable.

Claimant complained of chronic fatigue arising from her Hepatitis C. Her degenerative joint disease was noted. (Tr. 335).

In his decision, the ALJ determined Claimant had severe impairments of Hepatitis, chronic liver disease, and cirrhosis. (Tr. 17). She found Claimant retained the residual functional capacity to perform her past relevant light work as a deli clerk. (Tr. 21).

Claimant challenges the ALJ's findings that her psychological conditions found by Dr. Bayne did not constitute a severe impairment at step two of the sequential evaluation. At step two, the claimant bears the burden of making "a threshold showing that [her] medically determinable impairment or combination of impairments significantly limits [her] ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988). The step two determination is based on medical factors alone. Id. at 750. The claimant must make a "de minimus showing of medical severity" or the evaluation process ends, and benefits are denied. Id. at 751.

While Dr. Bayne, a consultative psychiatrist, found Claimant suffered from depressive disorder, NOS, secondary to chronic illness with an LOF of 55, he also found with proper treatment, Claimant could improve within the next 12 months. (Tr. 211). Further, in response to interrogatories submitted to Dr. Joyce

after examination of the medical record, Claimant's mental condition was not found to affect her in any significant way. (Tr. 241-242). Indeed, the record is devoid of any indication that Claimant's mental state would affect her ability to engage in work related activities. Consequently, this Court finds no error in the ALJ's assessment of Claimant's mental status.

Claimant also contends the ALJ should have considered her arthritis as a severe impairment. The mere presence of a condition or ailment does not give rise to a finding of an impairment. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987). The ALJ recognized the presence of the condition but found the condition was treated with over-the-counter medications. (Tr. 21). The record does not indicate that Claimant's arthritic condition significantly affects her ability to engage in either daily living activities or basic work activities. As a result, this Court finds no error in the ALJ's failure to consider Claimant's arthritis as a severe impairment.

As a final issue, Claimant asserts the ALJ should have considered her borderline intellectual functioning as a severe impairment. Claimant has re-characterized the medical findings in the record. No medical source concluded Claimant suffered from borderline intellectual functioning. Rather, Dr. Joyce states that

Claimant had below average intellectual functioning. (Tr. 241).

He did not conclude this condition constituted a medical

impairment. Id. Dr. Bayne found Claimant to possess an IQ

"greater than 80" and, therefore, concluded Claimant was

"employable." (Tr. 211). Again, the medical record does not

support Claimant's contention that she suffered from borderline

intellectual functioning which affected her ability to accomplish

basic work activities.

### Conclusion

The decision of the Commissioner is supported by substantial

evidence and the correct legal standards were applied. Therefore,

the Magistrate Judge recommends for the above and foregoing

reasons, the ruling of the Commissioner of Social Security

Administration should be **AFFIRMED**. The parties are herewith given

ten (10) days from the date of the service of these Findings and

Recommendations to file with the Clerk of the court any objections,

with supporting brief. Failure to object to the Findings and

Recommendations within ten (10) days will preclude appellate review

of this decision by the District Court based on such findings.

DATED this 26th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

12